UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                                    :
JUDITH M. WATITI,                                   :
                                                    :
        Plaintiff                                   :          Civil Action No. 07-4782 (JAP)
                                                    :
                v.                                  :          **OPINION**
                                                    :
WALDEN UNIVERSITY, et al.                           :
                                                    :
                                                    :
        Defendant.                                  :
_____:

APPEARANCES:


Kim A. Fellenz, Esq.
230 Neptune Boulevard
Neptune, New Jersey 07753
        *Attorney for Plaintiff*

Thomas E. Redburn, Esq.
John F. Basiak, Jr., Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068
        *Attorneys for Defendant*


PISANO, District Judge.

        This is an action brought by plaintiff Judith Watiti against defendants, Walden

University ("Walden") and Martha Giles (collectively, "Defendants") alleging breach of

contract, illegal discrimination, fraud, and consumer fraud.  Before the Court is a motion by

Defendants to dismiss the Complaint pursuant to Rules 12(b)(2) for lack of personal

jurisdiction and 12(b)(6) for failure to state a claim.  For the reasons set forth below,

Defendants' motion is granted and this matter is dismissed.

## I.  Background

<u>A.  The Parties</u>

Walden is a 35-year-old accredited institution of higher education with a focus on

providing advanced courses to working professionals.  Affidavit of Denise DeZolt ("Dezolt

Aff.") ¶ 2-3.  The school offers graduate degrees in fields such as education, psychology,

public health, business administration, human services, public policy, nursing and

engineering.  *Id.* ¶ 3.  Walden offers its students a "distance learning" environment, and many

of its courses are taught either completely or partially online.  *Id.* ¶ 4.  The university's

academic center is located in Minneapolis, Minnesota and its business offices are in

Baltimore, Maryland.  *Id.* ¶ 5.

Defendant Martha Giles is a Professor of Psychology and the Coordinator of

Professional Skills Development in the School of Psychology at Walden.  Affidavit of Martha

Giles ("Giles Aff.") ¶ 1.  Plaintiff is a former student at the school, having been enrolled in its

Ph.D. clinical psychology program.  Complaint ("Compl."), First Count, ¶ 2.

<u>B.  Plaintiff's Allegations</u>

Plaintiff began her coursework at the university in or about March 2004.  *Id.* ¶ 5. At

that time she was a resident of California.  Watiti Aff. ¶ 3.  In June 2004, Plaintiff moved to

New Jersey and continued her studies with Walden.  *Id.* at ¶ 4.  As best as can be discerned

from the Complaint, which is by no measure a model of clarity, it appears that the at some

2

unspecified point in time earlier than October 2004, representations or promises were made "by Walden University" to Plaintiff that Plaintiff would not be required to submit to testing in connection with her coursework on Saturdays.  Compl., First Count, ¶ 7.  Plaintiff is a member of the Seventh Day Adventist Church and, according to her religious beliefs, is prohibited from any nonreligious activity on that day of the week.  *Id.* ¶ 6-7.  Despite such a representation or promise by Walden, Defendants conducted required testing in connection with Plaintiff's coursework on a Saturday in or about October 2004.  *Id.* ¶ 6.  When Plaintiff refused to sit for such testing on a Saturday, Plaintiff "was failed" in a course[1] by Professor Giles.  Id. ¶ 8.

According to the Complaint, the decision by Professor Giles to fail Plaintiff "was subsequently overruled" and Plaintiff's failing grade in the class was changed to a "withdrawal."  *Id.* ¶ 9.  Plaintiff had to wait an additional year, *i.e.*, until September 2005, before she could retest for that course.  *Id.* ¶ 11.

Plaintiff continued her studies at Walden and in December 2005, enrolled in the second of three assessment courses that were required for her doctoral program.  *Id.*  Plaintiff alleges that Defendants, in retaliation for Plaintiff's refusal to sit for testing on a Saturday, "engaged in discriminatory testing" of Plaintiff in January 2006, which resulting in Plaintiff "failing coursework that she was then engaged in toward her doctoral degree."  *Id.* ¶ 12.  At some point thereafter, Plaintiff withdrew from the University.  *Id.* ¶ 15.

Plaintiff asserts that Defendants' actions violated the "American Psychological

---

[1] 'The complaint does not specify the particular course.

Association Ethical Standards," New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("LAD"), and New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1(c) ("CFA"), and constituted a breach of contract and common law fraud.  By way of relief, Plaintiff seeks monetary damages and injunctive relief, including an order that she be "reinstated into the clinical psychology program and simultaneously awarded her doctoral degree in clinical psychology" and that "all licensure requirements for the State of Texas [be] deemed met and granted."  Compl. at 6.

## II.  Discussion

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2) a party may move for dismissal of a case based on lack of personal jurisdiction.   "A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state."  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir.1987); *see also* Fed.R.Civ.P. 4(k).  The New Jersey long-arm rule, New Jersey Court Rule 4: 4-4(c), "extends to the limits of the Fourteenth Amendment Due Process [Clause] protection." *Carteret*, 954 F.2d at 145.  In accordance with that protection, a court may exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Whether sufficient minimum contacts exist to assert personal jurisdiction depends upon "the nature of the interactions and type of jurisdiction asserted." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir.2006).  For instance, where the cause of action "does not arise out of or relate to the [defendant]'s activities in the forum State," but the defendant has "continuous and systematic" contacts with the forum state sufficient to confer personal jurisdiction, a court is said to exercise general jurisdiction over the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & n. 9 (1984).  On the other hand, a court exercises specific jurisdiction when the defendant has limited contacts with the forum state but the suit against him arises out of or relates to those contacts.  *Id.* at 414 n. 8.  Regardless of whether a plaintiff asserts personal jurisdiction under the general or specific jurisdiction theory, a plaintiff must demonstrate that the defendant "has purposefully directed its activities toward the residents of the forum state, or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir.1998) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal citation omitted).

Once the question of personal jurisdiction has been raised, "the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction."  *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir.1992).  However, where, as here, a court does not hold an evidentiary hearing, the Plaintiff needs only to establish a *prima facie* case of personal jurisdiction.  *O'Connor v. Sandy Lane Hotel Co.*,

496 F.3d 312, 316 (3d Cir. 2007).  In such cases, a plaintiff is entitled to have her allegations

"taken as true and all factual disputes drawn in [her] favor."  *Id.* (quoting *Miller Yacht Sales,*

*Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.2004)).

Federal Rule of Civil Procedure 12(b)(6)

Recently, the Supreme Court refashioned the standard for addressing a motion to

dismiss under Rule 12(b)(6).  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969, 167

L.Ed.2d 929 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.*

at 1964-65 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d

Cir.2007) (stating that standard of review for motion to dismiss does not require courts to

accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s]

couched as factual allegation[s]" (internal quotation marks omitted)). Therefore, for a

complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the "[f]actual allegations must be enough to raise a right to relief above the speculative level,

... on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)...." *Twombly*, 127 S.Ct. at 1965 (internal citations and footnote omitted).

B.  Lack of Personal Jurisdiction

In the instant matter, Plaintiff argues that both Defendants have sufficient contacts

with New Jersey to support both general and specific personal jurisdiction.  Defendants, on

the other hand, argue that neither the Defendants, nor any of the alleged events giving rise to Plaintiff's claims, have any connection to this forum that are meaningful from a jurisdictional standpoint.  The Court shall examine the issue of jurisdiction as to each defendant in turn.

1.  Jurisdiction as to Walden

As described by Plaintiff, Walden is "not a traditional university " in that "one does not attend class in a traditional classroom setting on a college campus."  Affidavit of Judith Watiti ("Watiti Aff.") ¶ 5.  Rather, it promotes itself as offering students the opportunity to study from any location via the internet.  *Id.*  Walden admits it primarily utilizes a "distance learning environment" designed to meet the needs of working professionals.  Dezolt Aff ¶ 4. Many courses are either completely or partially taught online.  *Id.*  Indeed, Plaintiff states that "virtually all" of her coursework with Walden was done online, although she admits she was required to travel at one point to Dallas, Texas to perform certain clinical aspects of her studies, and her program required her to personally meet with her professors, apparently in Minneapolis, for evaluations.  Watiti Aff. ¶ 13.

Plaintiff states that she initially learned of Walden in 2004 by way of the university's "advertisements."  *Id.* ¶ 2.  At that time, it appears Plaintiff was a resident of California.  *See id.* ¶ 3.  Plaintiff began her studies at Walden in March 2004, while still a resident of California.  *Id.*  Several months later, in June 2004, Plaintiff moved to New Jersey and continued her studies with Walden.  *Id.* at ¶ 4.

With respect to the question of personal jurisdiction, Plaintiff asserts that both general and specific personal jurisdiction exists as to defendant Walden.  The Court will first examine

general jurisdiction.

a  General Jurisdiction as to Walden

As previously noted, general jurisdiction exists where the defendant has "systematic and continuous contacts" with the forum. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). General jurisdiction can exist regardless of whether a plaintiff's cause of action aries from the defendant's contacts with the forum. *Id.* Defendants argue that because Walden has no jurisdictionally significant contacts with the forum, general jurisdiction does not exist here. As stated above, Walden's academic center is located in Minneapolis, Minnesota, and its business offices are in Baltimore, Maryland. Walden does not own or lease any real estate in New Jersey, does not pay taxes to any New Jersey governmental entity and does not have any offices, registered agents or bank accounts in New Jersey. DeZolt Aff ¶ 5. Walden asserts that the school has never taught a course, held face-to-face residency instructional sessions, or conducted any part of the "learning experience" at a site physically located in New Jersey. *Id.*[2]

In support of her position that personal jurisdiction exists in this case, Plaintiff submitted an affidavit[3] which states that Walden's contacts with New Jersey are as follows:

---

[2]The New Jersey Commission on Higher Education concluded that Walden is not subject to licensure in the state because Walden neither conducts credit-bearing courses from New Jersey nor conducts "some portion of the learning experience at a location established in New Jersey by [Walden]." DeZolt Aff. at Ex. A.

[3]To the extent that Plaintiff makes bald assertions of fact in her brief that are neither asserted in her pleadings nor supported by affidavits or other competent evidence, such assertions have not been considered by the Court. *See, e.g.,* Pl. Brf. at 13 ("Walden solicited students and then entered into contracts with the students for the sale and purchase of its services and furthermore offered those services to its students . . . at their homes or other selected sites in New

1.  "Walden . . . advertises its services in magazines, newspapers and on television, particularly in New Jersey."  Watiti Aff. ¶ 2.  Plaintiff does not state the basis for her knowledge of this advertising, and she gives no further information regarding the advertising such as specifically where such advertisements appeared, when they appeared, and how often they were run.

2.  Plaintiff, after beginning her studies with Walden while she lived in California, "continued [her] coursework with Walden . . . as a New Jersey resident."  *Id.* ¶ 4

3.  Plaintiff "communicated with Walden by way of e-mails to faculty members and staff [including Giles] as well as doing coursework via the internet."  *Id.* ¶ 6-7.  Such communications were weekly from March 2004 through January 2006.  *Id.* ¶ 12.  She also renewed her enrollment at the school and registered for classes via the internet.  *Id.* ¶ 14.  She did all of this from her home in New Jersey.  *Id.* ¶¶ 9, 14.

4.  Walden also "offer[s] a toll free number to communicate with faculty and staff members," which Plaintiff used while she was a student at the school.  *Id.* ¶ 8.  She did this from her home in New Jersey.  *Id.* ¶ 9.

5.  "While [Plaintiff was] a resident of New Jersey, Walden University advertised its services on the internet."  *Id.* ¶ 10.

6.  Walden maintains a web site to promote and sell its services.  *Id.* ¶ 11.  Walden's website is www.waldenu.edu.  Def. Brf. at 10.  According to Plaintiff, Walden's "internet connection permits a . . . student to enroll in courses, change courses, and attend to all other

Jersey.").

9

usual student business. . . ." *Id.*

7.  Walden "clearly conducts its teaching business via the internet with the deliberate purpose of extending its services into the homes and other locations selected by students to communicate from and with Walden . . . includ[ing] New Jersey." Watiti Aff. ¶ 12.

Additionally, Defendants admit that Walden "periodically" holds "pre-enrollment information sessions for prospective students in New Jersey, at which its representatives distribute written material regarding, among other things, the University's academic program offerings, admissions and graduation requirements."  DeZolt Aff. ¶ 6.

In support of their argument that general jurisdiction does not exist in this case, Defendants point to several decisions examining the issue of personal jurisdiction as to out-of-state educational institutions.  In *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir. 1985), plaintiffs brought a wrongful death action against the defendant foreign medical school.  The Third Circuit found the school's contacts with the forum state, Pennsylvania, to be insufficient to establish general jurisdiction where the school (1) advertised in the *New York Times* and *Wall Street Journal*, newspapers which had some circulation in Pennsylvania; (2) enrolled Pennsylvania residents as students, (3) had its Chancellor and Vice Chancellor tour cities, including Philadelphia, as well as appear on radio and television programs, "to gain exposure and establish credibility" among the medical community; and (5) established a "feeder" program with a Pennsylvania university.

In *Gallant v. Trustees of Columbia Univ.*, 111 F. Supp. 2d 638 (E.D. Pa. 2000), a district court in this circuit addressed a similar question of jurisdiction in another wrongful

death action.  The plaintiffs in that case alleged that the university's contacts with Pennsylvania included (1) a student body that included Pennsylvania residents whose tuition generates income for the school; (2) collection actions filed by Columbia in the Commonwealth's Common Pleas Court; (3) multiple trust accounts overseen by First Union National Bank in Philadelphia; (4) fund raising and recruitment activities in Pennsylvania; (5) participation by Columbia professors and other employees in conferences, visiting professorships, and other academic activities in Pennsylvania; (6) participation in revenue-generating athletic events in this state; and (7) research contracts or agreements to conduct clinical trials between the defendant and at least six pharmaceutical companies conducting business in Philadelphia.  Although the *Gallant* court recognized that these contacts were more extensive than in *Gehling*, the Court found such contacts insufficient to establish general jurisdiction.  Defendants also cite to *Rodi v. Southern New England School of Law*, 255 F.Supp.2d 346, 350-51 (D.N.J. 2003), in which the court found that a form acknowledgment letter in response to plaintiff's inquiries about school and an acceptance letter from school was insufficient to establish personal jurisdiction, and *Severinsen v. Widener Univ.*, 338 N.J. Super. 42, 49-54 (App. Div. 2001), in which the court held that a university's recruitment efforts targeting New Jersey residents was insufficient to establish personal jurisdiction.

As the court in *Severinsen* noted, it can be said based upon the above-cited cases that courts apply a fairly stringent jurisdictional test to colleges and universities apparently in

deference to the "non-profit educational mission"[4] of these organizations.  *Severinsen*, 338

N.J. Super. at 54.   Plaintiff, however, responds that the above cases are distinguishable from

the present case because the schools involved in those cases were "brick and mortar"

institutions that the plaintiffs in those cases attended outside of the respective forum states.

Walden, on the other hand, provides a distance learning program that allows students to

engage in their studies from their home state.  Indeed, the ability to engage in one's studies

remotely is a key selling point of such a program.  Plaintiff argues that, consequently, the

Court should exercise personal jurisdiction over Walden.

  The Court agrees that distinction pointed to by Plaintiff between a "brick and mortar"

institution and an institution that primarily offers distance learning programs is a significant

one.  Indeed, in the context of a jurisdictional analysis, a university whose primary purpose is

to provide educational services to students within the forum state via the internet is certainly

distinguishable from a university outside the forum to which students must travel in order to

receive the educational services, even though the "educational mission" of both schools may

be similar.  In the appropriate circumstance, this distinction between the two types of schools

may be jurisdictionally relevant, and could potentially lead to a finding of general jurisdiction

over an online institution.  However, in the present case, the Court cannot make such a finding

on the record before it.

  The Third Circuit has held that in order to properly exercise general personal

jurisdiction over a defendant, the required contacts must be significantly more than mere

---

[4]There is no information in the record before it whether Walden is a "non-profit" or "for-profit" institution, but there appears to be no dispute that Defendant's "mission" is "educational."

minimum contacts.  *See Provident Nat'l Bank v. California Federal Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987).  These contacts must show that the defendant carried on a continuous and substantial part of its business within the forum state.  *Id.* at 438; *Gehling*, 773 at 541.  The Court finds that Plaintiff simply has not alleged any facts from which the Court can conclude that Walden's activities in New Jersey meet this standard.  First, the fact that Walden engages in advertising or promotion that reaches New Jersey residents does not itself subject Walden to general jurisdiction.  *See Giangola v. Walt Disney World Co.*, 753 F.Supp. 148, 156 (D.N.J.1990) ("In an age of modern advertising and national media publications and markets, plaintiffs' argument that such conduct would make a defendant amenable to suit wherever the advertisements were aired would substantially undermine the law of personal jurisdiction.").  The same goes for merely maintaining an website accessible by New Jersey residents.  *Osteotech v. Gensci Regeneration Sciences, Inc.*, 6 F.Supp.2d 349, 356 (D.N.J. 1998) (expressing concern that a finding of jurisdiction based on an Internet website would amount to a finding of worldwide jurisdiction over anyone who establishes a website).

    Further, the other contacts alleged by Plaintiff primarily involve just Plaintiff's relationship with Walden.  Indeed, the focus of Plaintiff's affidavit is more on her contacts with Walden than on Walden's contacts with the forum.  Most of these contacts described by Plaintiff appear relevant to New Jersey as a result of Plaintiff's decision to move to New Jersey and continue her studies with Walden, rather than any "continuous and systematic" actions on the part of Walden directed to New Jersey.  When Plaintiff applied to, was accepted to, and began the psychology program at Walden, she was a resident of California. DeZolt

Aff. Ex. A, Watiti Aff. ¶ 4.  It was only after starting her program did she relocate to New Jersey.  An online university's ongoing relationship with a only one student, particularly a student who relocated to the forum state subsequent to her application, admission, and enrollment in school's distance learning program, does not constitute the kind of continuous and substantial activity necessary support the exercise of general personal jurisdiction over the school.  Even when the Court takes into account the facts that the school has undertaken some limited recruitment activities in New Jersey and Plaintiff re-enrolled and registered for classes from New Jersey, the Court finds, particularly in light of the cases involving educational institutions discussed above, that the record in this case simply does not support the exercise of general jurisdiction. Consequently, the Court finds that, on the record before it, Plaintiff has not established that general jurisdiction exists as to Walden.

b.  Specific Jurisdiction as to Walden

The Court now turns to the question of whether Plaintiff has established the existence specific personal jurisdiction as to Walden.  "Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state."  *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).  The analysis with respect to specific jurisdiction exists involves a three-part inquiry:

> First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities.  Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comport[s] with fair play and substantial justice."

*Marten*, 499 F.3d at 296 (citations and internal quotations omitted, alteration in original).  The

14

analysis of questions of specific jurisdiction focuses on the relationship between the claims and contacts. *Id.* The evaluation is generally done on a claim-by-claim basis, although "it may not be necessary to do so for certain factually overlapping claims." *O'Conner*, 496 F.3d at 318 n.3.

Plaintiff's first claim is for breach of contract and alleges that Defendants "breached the contract existing between Plaintiff and the defendant Walden University." Compl., First Count, ¶ 14. Pursuant to this "contract," Walden "agreed to provide certain coursework and testing . . . to plaintiff in accordance with reasonable and established educational standards, including the standards set forth in the . . . American Psychological Association Ethical Code." *Id.* Plaintiff claims Defendants breached this agreement because the University engaged in "discriminatory" testing of Plaintiff in January 2006 that "violated American Psychological Association Ethical Standards." Compl., First Count, ¶ 13.

Plaintiff's second claim alleges that Defendants' "discriminatory and unlawful" conduct in January 2006 with respect to Plaintiff's coursework and testing constituted a violation of New Jersey's LAD.

The Third Count of Plaintiff's Complaint is a fraud claim. Plaintiff alleges that "representations made by defendant Walden University" that Plaintiff "would not be further subject to discriminatory and/or disparate treatment as respects compliance with the obligations of her creed" were false and made with the intent to induce Plaintiff's continued participation in the clinical psychology program.

The Fourth Count of Plaintiff's complaint alleges Defendants "engaged in

discriminatory reprisal against plaintiff notwithstanding representations made by . . . Walden University and impliedly by all of its faculty members that such discriminatory and/or disparate treatment in violation of plaintiff's religious preferences would not reoccur." Compl., Fourth Count, ¶ 3.

As best as can be gleaned from the Complaint, it appears that all of these claim stem from the same central factual allegations, namely, that Defendants administered a test or tests to Plaintiff in January 2006 that violated "reasonable and established educational standards, . . . including the American Psychological Association Ethical Code," *id.*, First Count, ¶ 14, in retaliation for Plaintiff's refusal in October 2004, due to her religious beliefs, to sit for a test that was being administered on a Saturday.  The alleged discriminatory testing took place in Dallas, Texas from January 11 through January 15, 2006.  DeZolt Aff. ¶ 11.  Plaintiff alleges that Defendants engaged in the discriminatory conduct after Walden had made a representation to Plaintiff that she would not be subject to discriminatory or disparate treatment.

The first step in the specific jurisdiction analysis is whether Walden has purposefully directed activities at New Jersey.  "Physical entrance is not required[,] . . . [b]ut what is necessary is a deliberate targeting of the forum."  *O'Connor,* 496 F.3d at 317.  Here, if Plaintiff's assertions are true, Walden has "purposely availed itself of conducting activities within the forum."  *Id.*  As a threshold matter, the Court notes that Walden specifically recruited New Jersey residents for enrollment.  Indeed, it advertised in the state, engaged in pre-enrollment sessions the state and maintained a website accessible to New Jersey residents.

Although "mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world," *Toys "R" US v. Step Two S.A.*, 318 F.3d 446, 454 (3d Cir. 2003); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)), the existence of the website, in connection with Walden's alleged advertising and promotional activities within the forum, as well as Walden's its acceptance of Plaintiff's re-enrollment and class registration through this internet link, show that Walden purposefully directed activities at New Jersey, *Toys R Us*, 318 F.3d at 453 ("In deciding whether to exercise jurisdiction over a cause of action arising from a defendant's operation of a web site, a court may consider the defendant's related non-Internet activities as part of the "purposeful availment" calculus.).

Also, more specific to Plaintiff's claim, Walden provided educational services to Plaintiff while she was in New Jersey.  Although Plaintiff fails to describe her online studies with any meaningful level of detail, it is reasonable for the Court to infer that where Plaintiff states that her "coursework with Walden University was on line," this means that Walden provided educational materials, instruction, and/or assignments to Plaintiff in New Jersey via the internet.  The Court finds that providing such services to Plaintiff in New Jersey also was activity purposefully directed at the forum.  *Toys R Us*, 318 F.3d at 452 ("If a defendant web site operator intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site, then the "purposeful availment" requirement is satisfied.").

The second part of the specific jurisdiction analysis is whether Plaintiff's claims "arise

out of or relate to at least one of those specific activities." *Marten v*, 499 F.3d at 296.  The

Third Circuit recently clarified the nature of this relatedness requirement in *O'Conner v.*

*Sandy Lane Hotel Co.*, 496 F.3d 312 (2007).  That case was a personal injury suit brought by a

plaintiff who slipped and fell while receiving a massage treatment at a Barbados hotel.  After

the plaintiff in that case had booked a stay at the hotel, the hotel mailed the plaintiff a

brochure describing the services available at the hotel spa.  After reviewing the brochure, the

plaintiff arranged for the massage treatment through a series of telephone calls to and from the

hotel.  Plaintiff slipped, fell and was injured during the massage treatment, and brought suit

against the hotel for his injuries in Pennsylvania.  The Third Circuit found that the facts

alleged by plaintiff were sufficient to specific personal jurisdiction over the hotel, as the

plaintiff's claims arose out of the hotel's contacts with the forum – mailing seasonal

newsletters to plaintiff, sending a brochure, and trading phone calls in order to form an

agreement to render spa services.

Under *O'Connor*, for a plaintiff's claim to "arise out of or relate to" the defendant's

contacts with the forum state, there must be "a closer and more direct causal connection than

that provided by the but-for test," but a connection that is looser than the tort concept of

proximate causation. *O'Connor*, 496 F.3d at 323.  The appropriate analysis is fact-intensive,

and must focus on the "reciprocity principle upon which specific jurisdiction rests," *i.e.*,

whether though purposeful contact with the forum the defendant received benefits and

protections of that forum's laws such that the defendant should, as a quid pro quo, submit to

the burden of litigating in that forum.  *O'Connor*, 496 F.3d at 323.

18

Here, Walden, while actively promoting its educational services in New Jersey, accepted the re-enrollment and class registration of Plaintiff, a New Jersey resident.  Walden then proceeded to provide educational services of an ongoing nature to Plaintiff, which were provided primarily through the internet to Plaintiff in New Jersey, although some portions of the classes for which Plaintiff enrolled required Plaintiff to travel out of state for certain in person evaluation and/or testing.  Nevertheless, it is directly from and in the course of this relationship – *i.e.*, Walden providing educational services to Plaintiff – from which Plaintiff's claims each arise.  As such, the Court finds the relatedness requirement of the specific jurisdiction analysis to be met.  By specifically targeting New Jersey citizens and then knowingly entering into an ongoing business relationship with a New Jersey resident, Walden availed itself of the protections and benefits of New Jersey law such that it should expect to submit to litigation in this forum.  *See, e.g., O'Connor*, 496 F.3d at 323 (through its mail and telephone calls into the forum, hotel availed itself of forum laws permitting it to enter into contract for services with state resident).

In the third and final step in the specific jurisdiction analysis a court may consider additional factors to ensure that the "assertion of jurisdiction otherwise comport[s] with fair play and substantial justice."  *Marten*, 499 F.3d at 296.  Here, Walden does not argue that the exercise of personal jurisdiction in New Jersey would be unjust or unfair, and the Court finds that the exercise of personal jurisdiction over Walden does not offend traditional notions of fair play and substantial justice.  Consequently, the Court finds personal jurisdiction exists such that the Court may hear Plaintiff's claims as to Walden.

c.  Jurisdiction as to Martha Giles

As stated earlier, defendant Giles is a Professor of Psychology and the Coordinator of

Professional Skills Development in the School of Psychology at Walden.  Giles, as a faculty

member of the university, was involved with two course in which Plaintiff was enrolled.

Although employed by Walden, for the purposes of assessing personal jurisdiction

Giles contacts with the forum must be analyzed separately from those of the university.  As

noted by the Supreme Court, "jurisdiction over an employee does not automatically follow

from jurisdiction over the corporation which employs [her] . . . Each defendant's contacts with

the forums state must be assessed individually."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S.

770, 781 n. 13 (1984)

Giles has been a Minnesota resident for the past 27 years.  Giles Aff. ¶ 2.  She has

virtually no contacts with the State of New Jersey – she has never visited New Jersey, does

not own or lease any real estate in New Jersey, does not pay taxes to any New Jersey

governmental entity, does not have any offices, registered agents, voter registration or bank

accounts in New Jersey, and has never conducted business in the State.  *Id.* ¶ 4.

Plaintiff asserts that both general and specific personal jurisdiction exist as to

defendant Giles.  Plaintiff bases her argument solely on the allegation that Plaintiff, from her

home in New Jersey, "communicated with . . . Giles by way of e-mails" on a weekly from

March 2004 through January 2006.[5]  *See* Watiti Aff. ¶¶ 7-9, 12.  Plaintiff has not provided the

_____

[5]Giles contests Plaintiff's claim of weekly electronic communications and asserts that all
of her interactions and communications with Plaintiff occurred during face-to-face sessions in
Minneapolis and Dallas for several Walden courses in which Plaintiff was enrolled.  Giles Aff. ¶
4.  Giles avers that she has no recollection of exchanging emails with Plaintiff.  *Id.*  However, on

Court with copies of any these electronic communications, nor has Plaintiff provided any information whatsoever regarding the subject matter or substance of these electronic exchanges.

Looking first at general jurisdiction, to the extent that it is applicable to individuals who are not residents of a forum state,[6] the Court finds that there are no factual allegations that support the exercise of general jurisdiction as to Giles.  Any contacts Plaintiff has alleged are not of such a continuous and substantial nature that Giles may be sued in New Jersey over any controversy.

The Court may exercise specific personal jurisdiction over Giles if she purposely directed activities at residents of New Jersey and this litigation resulted from "alleged injuries that 'arise out of or relate to' those activities."  *Burger King*, 471 U.S. at 472-73.  Applying this test, the Court finds jurisdiction to be lacking here as well.  Email correspondence such as is alleged will not trigger personal jurisdiction unless the communications show such "purposeful availment."  *See Toys "R" Us, Inc. v. Step Two*, S.A., 318 F.3d 446, 455 (3d Cir. 2003).  At best, Plaintiff has averred that Giles sent communications, of an unknown nature and subject matter, to an email address accessible by Plaintiff, and Plaintiff accessed these emails from her home in New Jersey.  As relevant to the issue of "purposeful availment," there is no evidence from which it can be inferred that Giles had any knowledge that Plaintiff

_____

a motion such as the present one, the Court resolves all factual disputes in favor of Plaintiff.

[6]*See Burnham v. Superior Court of California*, 495 U.S. 604, 610 n. 1, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (recognizing that "[i]t may be that [general jurisdiction] applies only to corporations ...")

was located in New Jersey or that Plaintiff would access the emails from New Jersey.  Unlike

a "snail mail" address (*i.e.*, U.S. Mail) or even a telephone number, there is usually nothing

about an email address that would indicate to the sender the location of the recipient.  Indeed,

an email recipient can typically access his or her email messages from anywhere in the world

with a computer (or other device) and an internet connection.  The Sixth Circuit made a

similar observation regarding email communications in *Rice v. Karsch*, 154 Fed. Appx. 454

(6th Cir. 2005), in which it held:

> There is nothing about this email address which indicates that [Defendant]
> would have accessed his yahoo.com email account or otherwise read this email
> in Tennessee. Finding personal jurisdiction over an individual merely because
> he sends an email to a generic email address is incomprehensible to this court.
> If such reasoning were adopted by this Court [defendant] would be subject to
> personal jurisdiction in any location where said email address could be
> accessed, *i.e.*, in every state regardless of whether the sender had any other
> contacts with that forum.

154 Fed. Appx. at 462.

Thus, from a jurisdictional standpoint, it can be said an email is not necessarily *sent to*

a particular location by the sender as much as it is *accessed from* a particular location by the

recipient.  This being so, where an asserted basis for personal jurisdiction is email

communications, a threshold question that should be asked with respect to the issue of

"purposeful availment" is whether there is any indication in the substance of the emails, the

email address itself, or other facts incident to the communications that the sender of the emails

was aware that the recipient was located in or would be accessing the emails from the forum

state.  In the instant case, that question must be answered in the negative.

Further, even if the Court did find that the email communications from Giles

22

constituted purposeful availment, there is absolutely nothing in the record from which the

Court can conclude that Plaintiff's claims "arose out of or related to" those contacts with the

forum.  Consequently, Plaintiff's complaint as to Giles is dismissed for lack of personal

jurisdiction.

C.  Failure to State a Claim

1.  Breach of Contract

As noted earlier, the First Count of Plaintiff's complaint alleges that Defendants

"breached the contract existing between Plaintiff and the defendant Walden University."[7]

Compl., First Count, ¶ 14.  Pursuant to this "contract," Plaintiff alleges Walden "agreed to

provide certain coursework and testing . . . to plaintiff in accordance with reasonable and

established educational standards, including the standards set forth in the . . . American

Psychological Association Ethical Code."  *Id.*

To state a claim for breach of contract, it is fundamental that a plaintiff must plead (1)

the existence of a contract; (2) a breach of that contract; (3) damages; (4) performance by

plaintiff of her own contractual duties.  *See Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp.

2d 374, 385 n.21 (D.N.J. 2006).  Here, Defendant argues that Plaintiff's claim fails because

she has not pled the existence of an enforceable agreement between the parties.

First, Defendant argues that the Complaint is deficient as to this claim because it is

_____

[7]Had the Court found that the exercise of jurisdiction over Giles was proper, this first
count as to Giles would not survive the motion to dismiss because Giles is not alleged to be a
party to any contract.  Generally, "one who is not a party to a contract may not be sued for a
breach arising out of it."  *Bocobo v. Radiology Consultants of South Jersey, P.A.,* Civ. No.
02-1697, 2005 WL 3158053 at *10 (November 21, 2005 D.N.J.) (quoting *Reilly v. Feldman*, 103
N.J.L. 517, 519 (N.J. Sup. Ct.1927)).  The First Count, therefore, fails to state a claim as to Giles.

void of any reference to the source of any contractual obligation.  Plaintiff's mere reference to

"the contract existing between plaintiff and defendant Walden University," Compl., First

Count, ¶ 14, does little more than parrot the language of the relevant elements.  This simply is

not sufficient under *Twombly*.  127 S. Ct. at 1964-65 ("While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

(citations omitted).

Second, Defendant argues that, even if properly pled, Plaintiff's breach of contract

claim fails as a matter of law.  According to Defendant, although Plaintiff claims that her

breach of contract claim is challenging the testing "procedure" undertaken by the university,

the substance of Plaintiff's challenge is directed at the university's evaluation of her academic

performance – "precisely the kind of dispute[] that the courts should be hesitant to resolve."

*Mittra v. University of Medicine and Dentistry of New Jersey*, 316 N.J. Super. 83, 91 (App.

Div. 1998)

*Mittra* involved the dismissal of a student from a university for poor academic

performance.  In that decision, the court drew a distinction between the application of contract

principles to, on the one hand, a university's determination whether to dismiss a student for

academic reasons, and, on the other, whether the university provided the academically

terminated student with a "fair procedure."  *Id.* at 91.  The former, the court noted, is generally

not appropriate for courts to address.  *Id.* ( "Academic evaluations of a student bear little

resemblance to the type of inquiry traditionally performed by the courts. . . . Rigid application of contract principles to controversies concerning student academic performance would tend to intrude upon academic freedom and to generate precisely the kind of disputes that the courts should be hesitant to resolve.").  Where the legal challenge involves the latter, however, it is permissible for the court to intervene.  Here, the Court agrees with Defendant that Plaintiff's breach of contract claim – which alleges that Plaintiff was not tested in accordance with "reasonable and established educational standards" – is more akin to the former, in that at its heart it seeks judicial review of the merits of certain academic determinations made by Walden's faculty, specifically, the manner and method to use to test a student's knowledge and whether Plaintiff demonstrated sufficient proficiency in the material to pass the exam. Therefore, the Court finds that Plaintiff's breach of contract claim fails.

2.  Law Against Discrimination

New Jersey's LAD provides that "[a]ll persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . .without discrimination because of . . . creed . . . subject only to conditions and limitations applicable alike to all persons."  N.J.S.A. § 10:5-4.  It appears from Plaintiff's complaint that she is alleging that Defendants violated the LAD by requiring Plaintiff to submit to testing on a Saturday, her Sabbath, in October 2004, and then by engaging in undefined "discriminatory" testing of Plaintiff in January 2006.  Plaintiff alleges that Defendants engaged in this "discriminatory" testing in 2006 "in retaliation for plaintiff's refusal to submit to testing" on a Saturday.  Compl., Count Two, ¶ 6.

Defendant first argues that Plaintiff cannot state a claim under NJLAD because none of the allegedly discriminatory conduct took place in New Jersey.  In support of its argument, Defendant points to case law in the employment context holding that the NJLAD does not apply to New Jersey residents who are subjected to discrimination while employed in another state. *See, e.g., Buccilli v. Timby, Brown & Timby*, 283 N.J. Super. 6, 10 (App. Div. 1995); *Brunner v. Allied Signal, Inc.*, 198 F.R.D. 612, 614 (D.N.J. 2001); *Karykous v. Sbarro, Inc.*, Civ. No. 06-2452, 2006 WL 2690287, *3 (D.N.J. Sept.19, 2006) ("Courts have previously held under New Jersey's choice of law rules that a New Jersey resident cannot assert a claim under NJLAD if he or she is employed entirely out-of-state.").  Such an interpretation protects employers from the potential unfairness of having to comply with several different legal regimes merely because it may have employees that reside in different states.  *See Buccilli*, 283 N.J. Super. at 11 (noting that "making the rights of each of several co-workers dependent on his or her state of residence would be an entirely unreasonable result").

However, while it is clear that, under New Jersey law, a plaintiff's New Jersey residence itself is not sufficient to trigger application of the NJLAD, an out-of-state defendant may be held liable under the NJLAD if New Jersey's contacts to the factual scenario are sufficient.  In *Bowers v. NCAA*, 151 F.Supp.2d 526 (D.N.J. 2001), which was a public accommodations case, the court found that the NJLAD was applicable to out-of-state defendants, including out-of-state universities, that allegedly discriminated against a plaintiff with regard to his eligibility to participate in intercollegiate athletics.  *Bowers* noted that the

26

proper analysis is to examine whether each defendants' contacts with New Jersey were sufficient such that application of New Jersey law under the facts of the case would not offend the United States Constitution.  In such an analysis, the focus is on the operative facts giving rise to the litigation, not contacts with New Jersey in general.  *Id.* at 533.

Looking at the facts in the instant case, and giving the Plaintiff the benefit of all reasonable inferences she is entitled to at this stage of the litigation, the Court finds that Plaintiff has alleged the existence of contacts between Walden and New Jersey that are sufficient to support the application of NJLAD to Walden without offending notions of Due Process.  In particular, Defendant established ongoing relationship with Plaintiff in New Jersey, providing her with educational services via the internet.  Significant is the fact that Walden provided Plaintiff with a course of study, most of which was intended to be undertaken from New Jersey.  Defendant's argument that Walden should not be subject to NJLAD for that brief portion of Plaintiff's course of study that took place outside New Jersey ignores this significant, relevant contact and improperly overemphasizes the importance of the physical site of the public accommodation.  *See id.* at 533 (noting that New Jersey courts have "de-emphasized the importance of the physical situs of the public accommodation" and further noting that "the location of the place of public accommodation is but one potential contact between New Jersey and the facts underlying this litigation.")

Next, Defendants argue that the facts as pled by Plaintiff do not state a claim under NJLAD.  Indeed, to the extent that Plaintiff bases her claims on the allegations that Defendants' required that Plaintiff sit for testing on a Saturday, Plaintiffs allegations fail to

state a claim under the LAD.  Plaintiff has not alleged that she was denied any accommodation, advantage, facility, or privilege based on her religious faith.  Plaintiff has pointed to nothing in the LAD that would have required the university to grant Plaintiff's request to test on a different day.  Moreover, Plaintiff does not allege that students of other religions were permitted exemptions from the Saturday testing requirement even though she was not allowed that same accommodation.  *See Walz v. Egg Harbor Twp. Bd. of Educ.*, 187 F. Supp. 2d 232, 243 (D.N.J. 2002) (rejecting LAD religious discrimination claim by student who was not permitted to distribute gifts with religious messages to classmates where there was no evidence that students of other faiths had been permitted to distribute gifts). Rather, Plaintiff's claims arise from her attempts to obtain an exemption from the school's regular testing procedure, which procedure was "applicable to all like persons."  *See* N.J.S.A. § 10:5-4.  To the extent that Plaintiff alleges that her request was not granted, such refusal does not establish the basis for a claim under New Jersey's LAD.

Plaintiff also alleges Defendants violated the LAD because she was subjected to "discriminatory" testing that took place in January 2006.  Compl., Second Count, ¶ 5 (which appears to be referring to the actions described in Compl., First Count, ¶ 12).  With respect to this claim, the Complaint uses convoluted and conclusory language that is long on legal conclusion but woefully short on facts.  In attempting to set forth this claim, Plaintiff alleges that "aforesaid actions of the Defendants . . . constituted discriminatory and unlawful conduct prohibited by LAD with respect to the gross and unethical practices and disparate treatment applied to [P]laintiff by said defendants in or about January 2006 as respects [P]laintiff's

treatment within the coursework then undertaken and the testing methods and circumstances under which she was tested by said defendants at that time."  Compl., Second Count, ¶ 5.  The "aforesaid actions" referred to by Plaintiff, which she narrows to those that occurred in January 2006, refer back to paragraphs which provide no further factual detail regarding the alleged discrimination.  *See* Compl., First Count, ¶ 12-13.

While the Court must consider the allegations in the complaint in the light most favorable to the plaintiff, the Court need not credit "bald assertions" or "legal conclusions." *Anspach ex rel. Anspach v. City of Philadelphia, Dept. of Public Health,* 503 F.3d 256, 260-61 (3d Cir. 2007) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir.1997)).  "[L]egal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Id.*  However, that is exactly what Plaintiff is attempting to do here.  Although Plaintiff baldly asserts over and over that Walden engaged in discrimination, Plaintiff has not alleged any facts sufficient to state her claim.

3.  Fraud

Defendant argues that Plaintiff's fraud claim is inadequate because she has not pled the claim with the requisite particularity.  Under Rule 9(b), where a complaint alleges fraud, a plaintiff must describe "with particularity" the circumstances that constitute the fraud.  Fed. R. Civ. P. 9(b).   Generally speaking, "Rule 9(b) serves to give defendants notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (alterations in original) (quoting

29

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).  The rule requires a plaintiff to plead with particularity the facts supporting the elements of fraud.  *Id.*  Thus, in order to successfully plead fraud under Rule 9(b), a plaintiff must offer "some precision and some measure of substantiation." *Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 257 (D.N.J. 1990).  Plaintiffs may satisfy the rule's requirement "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (quotations omitted).  A Plaintiff also must allege "who made a misrepresentation to whom and the general content of the misrepresentation."  *Id.*

In the Third Count of the Complaint, Plaintiff alleges that representations were made to her by "Walden University" that she "would not be further subject to discriminatory and/or disparate treatment" based on her religious beliefs.  Plaintiff claims that this representation was false, known by Walden to be false when they were made, and was made with the intent of "inducing plaintiff's continued participation in the clinical psychology program with the intent to engage in reprisals against her."  *Id.* ¶ 2.

With respect to Walden, the Court finds that Plaintiff's fraud claim falls short of fulfilling 9(b)'s particularity requirement.  There is no indication as to who at the university made the allegedly false representations, when they were made, where they were made, or how they were made, nor has Plaintiff provided an "alternative means of injecting precision and some measure of substantiation into [her] allegations of fraud."  *Lum*, 361 F.3d at 224.  As such, Plaintiff has failed to state a claim of common law fraud.

4.  Consumer Fraud Act Claim

        To plead a claim under the CFA, a plaintiff must allege the following: (1) an unlawful

practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus

between the first two elements-defendants' allegedly unlawful behavior and the plaintiff's

ascertainable loss.  *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8,

12-13 (App.Div .2003).  Notably, CFA claims "sounding in fraud" are subject to the

particularity requirements of Federal Rule of Civil Procedure 9(b). *See Naporano Iron &*

*Metal Co. v. Am. Crane Co.*, 79 F.Supp. 2d 494, 510 (D.N.J.2000).  For this claim, Plaintiff

relies on the same deficient allegations that she set forth in support of her fraud claim.

Therefore, the claim fails for the same reasons.

        Additionally, Defendant asserts that Plaintiff's CFA claim fails on the merits as well.

Defendant argues that universities (and university professors) are "learned professionals" and,

therefore, are exempt from coverage under the CFA.  *See Gourdine v. Felician College*, 2006

WL 2346278 (App. Div. Aug. 15, 2006).  Under this doctrine, advertisements and statements

made by professionals such as attorneys, architects and physicians in the course of delivering

professional services are exempted from the scope of the CFA.  *See Macedo v. Dello Russo*,

178 N.J. 340 345-46 (2004).  In *Gourdine*, New Jersey's Appellate Division affirmed a trial

court's application of the doctrine to a college and individual educator.  *Gourdine*, 2006 WL

2346278 at *7.  Here, the parties do not dispute that Walden is an institution of higher

learning.  As such, the Court the CFA to be inapplicable to the facts as pled, and,

consequently, Plaintiff's claim under this statute fails.

**III.  Conclusion**

For the reasons stated above, Defendants' motion is granted and Plaintiff's Complaint is dismissed without prejudice.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.)  Plaintiff, if she so chooses, may file an amended complaint within 30 days of the date of this Opinion.  An appropriate Order follows.


/s/ JOEL A. PISANO
United States District Judge

Dated: May 30, 2008